Good morning. May it please the Court? Counsel, my name is Darwin Roberts. I'm an Assistant U.S. Attorney in Seattle, and I represent the United States in this appeal. This is a Federal Tort Claims Act case. Under the FTCA, the United States is to be held liable to the same extent as a private individual under like circumstances. Simply put, we're here today because the District Court was required to apply the Washington Periodic Payment Statute 456-260. It was issued upon the request of the United States, but did not do so. Because it did not do so, the United States was not held liable to the same extent as a private individual under Washington law. As a result of Washington law and the periodic payment structure, what happens to the payout if the minor dies before the end of the term? Where does the money or obligation go? Under subsection 5 of the statute, Your Honor, that specifically – well, under subsection 5 of the statute, any party in interest may petition the Court to allocate the payments. If no party in interest petitions the Court, presumably the rest of it would go to the estate. The estate of the child. Yes. Okay. Now, in the – the problem, as I understand it, is that the government has to come up with a different mechanism and came up with a reversionary trust approach. Is that right? Yes, Your Honor. Although I think the term trust has been overused in this case. The trust is really just the mechanism that the United States is going to use to hold the funds that it uses to purchase the annuity, presumably, which will be used to make the periodic payments. All right. So now, given my question about the early demise of the minor, is the same regime then applicable? If it's the same controls over what happens to the funds? Yes, Your Honor. I presume – The difference between that and the periodic payment in a normal Washington payout situation. I don't see any difference, Your Honor. I mean, among other reasons, I think it would be very common for parties under Washington law, in fact, to make their periodic payments through just this sort of annuity. If you'll notice under subsection 4 of the statute, it's a very severe provision for the party if it misses a periodic payment. One single payment one day late can – makes it possible for the other party, the judgment creditor, to petition the court to end all periodic payments. So I think annuities would actually be the most common approach under the statute. The court in this case was worried about, and said quite explicitly, that given the family history, that it was concerned about having some structure, apparently, that would create incentives or whatever. It would be a windfall in any event to the family in the case of the badly afflicted to be the actual beneficiary of the payouts. That's correct, Your Honor. And I think the statute addresses those concerns in two ways. One is, again, under subsection 5, it does give the court the discretion to decide what should happen to any remaining funds at the time – should the tort victim die before those funds are exhausted. And also, under subsection 2, it very carefully directs the court to specifically take into account the interests of justice and the needs of the tort victim in setting up a periodic payment scheme. And it clearly does not restrict the court to the proposals that are made by the parties themselves. It directs the court to solicit proposals from the parties, but it says the court shall select the proposal with any modifications the court deems necessary in the interest of justice and the tort victim. Thank you, Your Honor. So if the child suffers an early death, the money goes to its estate. The child's estate would presumably – I'm not sure how Washington law works, but if the child's a minor, it would probably then go to the parents. Yes, depending on whether there's a will. If the child's disabled, obviously there would be issues as to whether he could competently execute a will and so forth. But typically, yes, it would wind up going to the parents, I believe. Did the district court here require to make a finding on what the future damages will be? Yes, Your Honor. Under the terms of the statute, the district court is directed to, under subsection 1, shall make a specific finding as to the dollar amount of periodic payments intended to compensate the judgment creditor for the future economic damages. And that amount would be put into a trust and the bills paid out of that trust? Yes, Your Honor. It depends a little bit on how it's structured. Obviously, subsection 2 of the statute allows the parties to submit their own proposals as to how it should be done. Right. If you look at ER 77 to 78, Your Honor, the United States in this case submitted a proposal for a trust to be seeded with a fund and then have an annuity purchased on top of that. So there would be a corpus and then an annual payout from the annuity. The annual payout would not be dependent upon bills and statements? No, Your Honor. But the fact that there is a seed to the trust corpus would allow that to be – would allow flexibility in that approach. Of course, the court is not obligated to adopt the approach suggested by the U.S. I understand. But your proposal would be that the bills would be compensated, all future bills of the injured child would be compensated? Through the use of this trust device, yes, Your Honor, with the seed and the periodic payment. So the main issue, I suppose, is between the parties is what happens if there's an early demise of the victim, who gets the remaining amount that's in the trust? And under subsection 5 of the statute, Your Honor, that is a matter for the court's discretion upon the petition of any party in interest. At the end – should it occur? Should it occur, yes, Your Honor. So when you were talking about a reversionary trust, I assume a reversionary trust, the money would go back to the government. You might make that proposal and other proposals will be made, but then the court itself will decide what's in the best interest of the parties. Yes, Your Honor. I believe the United States is authorized. There's nothing in the statute that precludes the United States from requesting a reversion. The statute is absolutely silent on the issue. The United States can request it. The court doesn't have to grant it. And it's always under the statute subject to the petition of any party in interest should the judgment creditor die. Okay. I understand that. Now, the real issue we have before us is whether or not this section was triggered such that the district court should have proceeded with making a determination of the type of trust involved. Yes, Your Honor. And that triggering, I'm not clear from the briefs what it takes to trigger. I see your United States offer of proof on damages where it indicates, is there a problem that you miss cite the statute? Does that create a difficulty? Well, I think it was unfortunate, but I don't believe anyone's challenging here that the text of the statute was correctly cited. I'm sorry. It was just an inadvertent error. You don't lose on that because the idea is to give notice to the court of what you're asking. Yes, Your Honor. And then your argument is that after you give that notice, it's mandatory that the district judge then go through this process. Yes, Your Honor. Under Washington law. Right. That's why the legislature used the word shall. It commands it. Okay. Thank you. I believe the United States did everything necessary to invoke the statute in this case. I just point the Court to ER 67, line 18. The United States requests that the Court's award for future medical payments to Jose Dutra be in the form of periodic payments. And then the United States made the proposal that's found at ER 77 to 78, and also in the United States' offer of proof, which I'd submit adequately preserved the issue for appeal. Unless the Court has further questions, I'd like to reserve the balance of my time. All right. Thank you, counsel. Thank you. Good morning. I'm James Holman. I represented Robin Balsam at the trial level. I was the trial attorney. And I handed out a brochure, a single-page document. I have an enlargement I was going to show, but I'm not going to go through that because I think there's some other questions involved here. I'd like to approach this a little bit differently, one somewhat on a legislative side, one on the procedural side, and then really on what the facts of this case were and what was presented at the time of the trial. Legislatively, RCW 456-260 does not, in fact, allow for a reversionary trust. It's very specific. That language is not in the statute. It allows only for periodic payments. At the lower level, in front of Judge Layton, who is going to very carefully review this entire issue, what the government asked for was a reversionary trust for medical specials only. It did not ask for anything else. It had Anne Marie McNally and the offer of proof from Texas want to place money in a trust run by people in New York to legislate to take this money and to pay future needs of this boy. Is it your argument that the requirement under the Washington statute was never triggered? I believe it was never triggered because it was never asked for. Well, when he cites the statute, even though he says reversionary payments at one part, when he first starts the statute, asks about the statute under the offer of proof, he refers to it as periodic payments and cites the statute. Are you saying that the district court at that time was unaware that the Washington rule is that he shall at that time proceed with the Washington rule on getting proposals for the trust? No. I think Judge Layton clearly knew that we were dealing with the statute. Clearly knew what? Clearly knew that we were dealing with RCW 456-260. There was no question about that. So he knew he was dealing with the statute? Absolutely. And it says shall, and what is it that he was required to do, the district judge? Well, there's a number of different things, Your Honor. If you get just to the application of the statute, while the first part of the statute talks about periodic payments, the second part of the statute does use the word shall, but it sets out five different categories, item by item, in terms of the amount, the method of payment, the dates of the payments, how long the payments are made, security, all of those things should be considered. And then let me read you what the second part says. Before you do that, just make sure I'm up with you. Sure. When it says that, he's supposed to ask for proposals from both sides, right? Absolutely. The government has to come in because it's their burden of proof to come in and request it. So the government needed to see it. No, that's not what it says. It says the court will now say timeout, I want proposals from both sides. Absolutely. But it's the party that's proposing it, which would be the government, to come forward and then take the steps through the statute to provide for, and what it is, is for the name of the recipient, the dollar amount of the payments, the interval between payments, the number of days. You can read the statute, sir, but what – I'm confused in your answer to Judge Wallace's. Prior to entry of the judgment, the party shall request each party to submit a proposal for periodic payment and so on. Proposals shall include provisions for. I thought Judge Wallace was asking you about the first clause. Right. Did the judge ask each side to prepare a proposal? The judge is – once they came in with the proposal for a reversionary trust, we came back and said. Did the judge ask you, the parties, did the court say, I treat this as triggering, I understand we're under this statute. I want each party to come up with a full-fledged document with their proposal. Did that happen? That did not specifically happen because we came back and we said that we didn't believe that 456.260 applied and that it did not allow for reversionary trusts. The reason is, is based upon the record, what the government was asking for was a So your argument was, as you started out earlier, was that the rest of the statute or the statute itself really isn't applicable. Correct. Okay. So given that position, why are you faulting the government for not producing provisions? You're arguing that the statute doesn't apply and it sounds like that's what the judge was off on. I understand your legal challenge, but your outline seems to suggest that if it does apply, they flunked because they didn't do the detail you were starting to read. But, in fact, the judge also didn't ask for those proposals. Well, what I think what Maybe he did. Probably not. It didn't come up in that clear of a method, Your Honor. What happened was, is that prior to trial, within a short period of time, they asked for reversionary trust. We came back and objected to that proof and said that we do not believe our State statute allows for it. There's only two ways that the government can have a reversionary trust in State law. I understand it. One is if the State has a reversionary trust statute and then the district court has the ability to fashion a remedy consistent with that statute. We don't have that statute because it does not allow for a reversionary trust. The second way is, is to come in and say that it has, the district court has the inherent power to create a reversionary trust only if it's in the best interest of the plaintiff or the claimant. And that clearly was not shown here. So what we said is, is that it's not applicable. For purposes of this appeal, though, what we wanted to do, though, is go through the steps. One, we don't think that they should legislate in Washington, the district or the government, what Washington has decided over 20 years. It's our schedule of damages. We don't allow for reversionary trust. The second is, is a procedure. The problem is, as I understand what you're saying, is once they use the term reversionary, they're out. Well, if they came back. And the statute doesn't need to be followed. I don't think it's quite that simple, and I don't mean it to be that simple. But when they need to specifically say, we're going to follow 456.260, here's what we intend to do. And then come forward and say, and provide that actual plan. Wait, wait. Did they come forward and provide a trust? No, they didn't. No, it's just a statement. Yeah. They came forward and they had a concept of what to do, but they didn't break it down into the specifics of the plan. No, the court didn't ask them for the trust plan or ask you for a trust plan. The court didn't follow the statute. And that's what's bothering us. Maybe the court's going to do all this and come out where it is now. Correct. But with the term, say, shall, the thing that bothers at least one-third of the court is that shall is there for a purpose. And I don't see, when the court doesn't even ask both sides for a plan and begin to look at it, that shall has been complied with. Maybe you can help me with that, but I'm. Let me try it this way. When they presented it, Judge Layton, knowing of the statute, told us that at several different times to see if we could work out a procedure whereby once the case was going on and evidence had been shown that the case may be resolved through settlement. We attempted to do that on a number of different occasions. So, in essence, we looked at the statute, we discussed the statute, but in terms of us coming forward and saying, here is our proposal for periodic payments, I didn't do that because I don't think the statute requires periodic payments in the reversionary form trust. Now, what we did do, though, is we presented the evidence of Robin Balsam, who is the guardian of Jose Dutra and who is the trustee, who came forward and said, if you have any kind of reversionary trust, that may, in fact, be illegal in terms of her position. She develops a guardianship and then she developed a special needs trust. Under a special needs trust, she has to pay back to Medicare the benefits that Medicare pays for Jose Dutra over his lifetime. That trust may, in fact, be violated if, in fact, there's a reversion where the government ends up with 100 percent of the money at the end of the trust. There was a number of other categories that she discussed what, in fact, would be the best interest of Jose Dutra, which is really anticipated by this statute. The second part, which has not been read yet, but the court shall select the proposal with any changes the court deems proper, which in the discretion of the court and the interest of justice best provides for the future needs of Jose. And that's what Judge Layton really did. He listened to several hours of testimony of Robin Balsam, who discussed what the best needs of Jose were, how it would be impossible to have actually two trusts, a reversionary trust that we've heard the U.S. government, that's what they wanted, a reversionary trust, and then her trust, which has this corpus or other amounts of money for the benefit of the child, having two then administrators, two double expenses, and having these conflicts of law between the reversionary trust saying that all the money goes back to them and her obligations under the special care trust in which she has to pay back benefits. There were a lot of other ideas to that. So Judge Layton, I think, did an extremely good job in looking at what the government wanted at the very start, which was purely a reversionary trust for medical future benefits. And just to – I know I'm running out of time, but just a final moment. Well, can I ask a question? Did Judge Layton order that the damages be placed in the special needs trust? Absolutely. A hundred percent of everything that Jose receives in this case goes into the special needs trust. It's then subject to the Washington State courts, plus all the Federal rules and regulations, guaranteeing what happens. And that's within the trust and the guardianship. How does it say that in the record, that that was the order? It's in our brief, and it's in – I can find it for you, but it is in the brief under – and the sections are there. And it's in the findings of fact in terms of who the – the plaintiff in the case is, in fact, the special needs trust and guardianship, Robin Balsam. So that money goes directly into that trust, Your Honor. Hmm. That's not who it says are the plaintiffs in this, during the findings of fact and conclusions of law. The plaintiff is truly the guardianship. It says Jose Dutra Minor. Right. But, of course, if a minor is going to sue, they have to have a guardian for the purpose of suit. But nothing seems to say that the money is going into the special needs trust. I – the commencement day guardianship services is Robin Balsam. That's how – that's her business name. She's the one that then has, and they're part of the record, the guardianship and the actual special needs trust were admitted into evidence. Right. But I'm saying where in the record did the court order that the money go in – be placed into the special needs trust? It's in the – I believe it's in the judgment itself, Your Honor. I don't have that right. Well, I just reread the judgment. Now, for the third time, can't find it. I will find it for – I can supplement and find it for you, but it's very clear in the record. Okay. Thanks. Thank you, Your Honor. Thank you. Just very briefly, Your Honor. The special needs trust is really a red herring here. It was created by the plaintiffs. It wasn't created by the court. The trust instrument isn't even in the record any place. I don't think it's really before the court what exactly it is. But regardless of that fact, the special needs trust does not satisfy the statute. The court didn't satisfy the procedure because it didn't go through the steps it's required to do to create the special needs trust, and it doesn't satisfy the requirement the United States be held liable to the same extent as a private party because the special needs trust does not provide for periodic payments, and it does not give the United States the potential future right under subsection 5 of the statute to petition for disposition of any remaining assets should Jose die. Thank you, counsel. Any other questions? This case, future versus United States, will be submitted.
judges: Wallace, Wardlaw, Fisher